Trust Company of Chicago, Administrator of Estates of Clarence White, Jr., Walter White, Magnolia White and Vernola White, Minors, Appellee, v. Sylvia B. Wentworth, Appellant.

Gen. No. 45,291.

213

Opinion filed April 9, 1951. Rehearing denied April 27, 1951. Released for publication May 7, 1951.

BURT A. CROWE, of Chicago, for appellant; CARL E. ABRAHAMSON, of Chicago, of counsel.

SIDNEY LYON, and ALFRED M. LOESER, of Chicago, for appellee.

MR. JUSTICE TUOHY delivered the opinion of the court.

Plaintiff, administrator of the estates of Clarence White, Jr., age 6, Walter White, age 3, Magnolia White, age 5, and Vernola White, age 2, sued defendant for the wrongful deaths of said minors. From a judgment entered on a jury's verdict finding the defendant guilty and assessing plaintiff's damages for

each of the minors' deaths at the sum of $7,500, defendant appeals.

The amended complaint charges that defendant owned, possessed, and controlled a four-story building located at 3111–3113 Cottage Grove avenue in the City of Chicago; that Clarence White and Bessie Mae White and their four minor children were tenants of defendant residing in the rear of the first floor of the building; that about 3:30 p. m. on January 9, 1947, a fire occurred which destroyed the premises, causing the deaths of plaintiff's intestates; that defendant and her agents were guilty of the following acts which directly caused the fire and consequent deaths of the minors: (a) did not comply with the ordinances of the City of Chicago and the laws of the State of Illinois, with reference to the safety and fire hazards in the maintenance of buildings which house tenants; (b) carelessly and negligently permitted the said building to be overcrowded with tenants; (c) negligently and carelessly failed to maintain safe and proper means of entrance and egress to and from the said building and to and from the said room occupied by Clarence White and his family; (d) carelessly and negligently allowed inflammable materials and unsafe stoves and heating apparatus to be used in said building; (e) permitted debris, junk and waste materials consisting of old furniture, bric-a-brac, upholstery and other old articles to be piled up on the said premises in violation of the fire ordinance.

The answer admits that the persons described in the complaint were occupying part of the first floor of the premises but denies that they were tenants and alleges that they were trespassers; alleges that the room occupied by the Whites was not under defendant's control; and denies all of the acts of negligence set forth in the complaint. A reply filed to the answer alleged that the fire arose in the part of the premises reserved by the defendant and under her control "and

215

was for the common use of all of the tenants in the said premises and [contained] facilities provided by the landlord which were so negligently maintained that they caused the said fire.''

The principal ground relied upon for reversal here is that there is an entire absence of proof as to the cause of the fire which resulted in the deaths; that, plaintiff having failed to make out a prima facie case of negligence, the trial court should have allowed defendant's motion to find her not guilty, made at the close of plaintiff's case and again at the close of all the evidence, and for judgment notwithstanding the verdict.

■■ The evidence establishes the following facts: The premises at 3111–3113 Cottage Grove avenue is a four-story brick building on the east side of the street. On the street floor there are two stores and in the upper floors 14 or 16 apartments occupied on the date of the fire as living quarters. The store at 3113 was rented to a church and was used for the holding of religious services; 3111 was occupied as a poultry store. In the rear of the store at 3111 was a large room leased by the church, partitioned into a living room, kitchen and two bedrooms occupied by Clarence and Bessie Mae White and their four children as a residence. Clarence and Bessie Mae were members of the congregation which held religious services in the church. They had no agreement with the defendant as to their tenancy. The minister of the church, Rev. Richard Bozeman, testified that the church rented from defendant's agent under an oral month-to-month lease; that six months before the date of the fire he became acquainted with Clarence White and his family; that White was a deacon of the church; that the Whites lived in the north end of the building; that the church permitted them to move in there. The minister testified that White donated various monthly payments to

the church. White testified that he paid the sum of $25 a month as rental. It appears from the testimony that no objection was made to the occupancy by the Whites on the part of the defendant or her agents, and a reasonable inference from the testimony is that the Whites were subtenants.

The mother, Bessie Mae White, testified that she was in the kitchen of the premises with the four children when the fire occurred; that she heard a noise coming from above which sounded "like a gong going off," and looking up, saw the ceiling was coming in and falling on her; that she hollered "fire" and ran from the premises to the outside; that the door shut behind her and locked. There were two doors in the apartment, one leading outdoors to the rear and the other through the church portion of the building. There was a window in the living room and one in the kitchen. After the witness got out of the door she tried to get back in but was unable to open the door. She finally got in and picked up her eldest child, but was unable to reach any of the others.

There is no direct evidence as to the cause of this fire. Plaintiff urges that there is some evidence that the fire was caused by the improper maintenance of flues in the building. There is a boiler located in the basement of the building maintained by the landlord which furnishes hot water to the apartments above. Several witnesses testified that whenever they had hot water in their apartments there would usually be smoke in the vestibule or apartments. There was some dispute as to whether or not there was hot water on the day of the fire. The janitor, two repairmen and numerous tenants testified that the boiler had broken down some ten days before the fire, that it was beyond repair, and that there had been no hot water for that period of time. Several other tenants, however, testified that there was hot water on the day of the fire,

and we shall treat that question as having been resolved in favor of the plaintiff by the jury's verdict. There was further testimony that from time to time bricks fell from the flues, leaving openings into the apartments from which smoke and flame sometimes emerged. However, whether or not there was hot water or whether there were defects in the flues does not seem to support the inference which plaintiff deduces, because the undisputed testimony shows that the chimney which took the smoke out from the heater went from the boiler room to an outside wall and up the side of the wall to the roof. There were no openings in this chimney into any apartments of the building. The stacks referred to by the witnesses, from which the bricks were missing and from which on occasion smoke and flame emerged, were stacks which went from the various apartments directly "to the outside of the building," being connected with the stoves of the individual tenants. The physical facts demonstrate that smoke and fire could not have emerged directly into the tenants' apartments from the chimney leading from the boiler room. It does not appear anywhere from this evidence that these stacks which were in disrepair were under the control of the landlord or that the tenants had received them in such condition; but even if there was negligence in the maintenance of these stacks which is chargeable to the landlord, there is no evidence, direct or circumstantial, that the fire in question was caused by any defect in these flues.

Plaintiff states its theory in its brief as follows:

"Thus the cause of the fire could have been almost anything anybody's imagination might build up but nothing else was shown and the greatest likelihood was that the cause of the fire was the flames spurting out of the flues and chimneys on that date particularly

since the janitor testified they were worse on that date."

Much significance is attached to the testimony of the janitor. He was questioned at length, in an attempt to lay the foundation for impeachment, about a statement he had made sometime before the trial. In the statement he said that at times bricks would fall down from the flues where they made connections from the inside stoves and he had said that on occasion fire would shoot out of the holes. Although the statement itself was properly denied admission in evidence, plaintiff insists that the janitor testified, in reply to a question about the statement, that the smoke issuing from these holes was worse on the day of the fire. He did not so testify, as we read the record. On the contrary, he stated that there was nothing wrong with the flue leading from the hot water heater but that the flues which in his written statement he had said were in disrepair were those leading out from the various apartments, and he testified to no observation made on the day of the fire as to the condition of any of these flues.

Plaintiff makes a further argument that, because the back door closed and locked when the mother ran from the apartment upon discovering the fire, this tends to support the allegation of negligence in the complaint to the effect that defendant failed to maintain safe and proper means of entrance and egress to and from the building. We are unable to agree that any such inference may properly be drawn from the evidence. The testimony shows that the door was equipped with a Yale lock which, when the catch was on, locked the door upon closing. We find no negligence in equipping a door with such a lock. It is also argued that it was negligence to have bars on the windows. This apartment was located on the first floor.

The bars on the windows were evidently placed there for purposes of safety, and there is not the slightest evidence that the bars in any way caused or contributed to the deaths of the children.

From a reading of the entire record it appears that this building was overcrowded and in many respects negligently maintained, but there is a complete absence of any facts of probative value to indicate that such conditions were the cause of the fire or of the deaths of these minors. None of the allegations of the complaint are supported here by more than mere conjecture. In the case of *Celner v. Prather*, 301 Ill. App. 224, it is said at page 227:

"Proof of a mere possibility is not sufficient. A theory cannot be said to be established by circumstantial evidence, unless the facts are of such a nature and so related, as to make it the only conclusion that could reasonably be drawn. It cannot be said one fact can be inferred, when the existence of another inconsistent fact can be drawn with equal certainty."

█ It is as reasonable here to conclude that the fire started as a result of the negligence on the part of some tenant in the building as it is to conclude that it was caused by any negligent act of the defendant. In either event it is pure speculation. The trial court, from his statement in the record, concluded that the cause fell within the doctrine of *res ipsa loquitur*. We find no justification for the application of this doctrine to the facts in the instant case. The trial court was patently influenced by the deplorable conditions under which the tenants in the building lived and by the awfulness of the tragedy which befell this unfortunate family. These circumstances, however regrettable, cannot be substituted for proof, which plaintiff in this case failed to adduce.

█ There being a complete absence of proof of any acts of negligence on the part of the defendant

220

which proximately caused or contributed to the deaths of plaintiff's intestates, the judgment of the Superior Court is reversed.

*Reversed.*

NIEMEYER, P. J. and FEINBERG, J., concur.